IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAMADOU B. DIALLO #A72 165 710  :

    Petitioner  :

    v.  :    Civil Action No. AW-07-348

MELANIE C. PEREIRA, Director  :
of the Howard County Detention Center,
et al.  :

    Respondents  :

. . . .o0o. . . .

**MEMORANDUM**

Pending is a pro se 28 U.S.C. §2241 petition for writ of habeas corpus filed by Mamadou B. Diallo, an alien subject to an administratively final order of deportation. Petitioner, a detainee at the Wicomico County Detention Center,[1] challenges his continued detention under the Immigration and Naturalization Act ("INA") § 241(a), 8 U.S.C. § 1231(a), based upon *Zadvydas v. Davis*, 533 U.S. 678 (2001), and he seeks release from confinement until his removal can be effected.

Counsel for Respondent, U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security has moved to dismiss the petition and has filed verified exhibits in support. Petitioner has filed a reply in opposition. Upon review of the pleadings, the court determines that a hearing is unnecessary. *See* Local Rule 105.6. (D. Md. 2004). For the reasons that follow, the Petition shall be denied.

---

[1] At the time he filed the Petition, Diallo was in the custody of the Warden of the Howard County Detention Center.

**I. Background**

Petitioner is believed to be a native of Guinea and a citizen of Togo who entered the United States in 1993 as a nonimmigrant. In 2002, he was convicted in the Circuit Court of Maryland for Prince George's County for first degree assault, second degree assault, false imprisonment, and reckless endangerment. He was sentenced to ten years incarceration.

While serving his criminal sentence, Petitioner told an ICE special agent that he was a native of Togo. Resp. Ex. 1, ¶ 3. Petitioner was served with a Notice of Intent to Issue a Final Administrative Order, alleging him to be a native of Guinea and a citizen of Togo, and charging him as being removable from the United States. Petitioner filed a rebuttal to the Notice of Intent, but did not dispute that he is a native of Guinea and a citizen of Togo.

Petitioner was taken into ICE custody on October 13, 2005. On November 22, 2005, he was served with a Final Administrative Order of Removal. Resp. Ex. 2. On December 30, 2005, Petitioner filed for a petition for writ of habeas corpus. *See Diallo v. United States*, Civil Action AW-05-3480 (D. Md). On January 10, 2006, this Court ordered the Petition transferred to the United States Court of Appeals for the Fourth Circuit, and stayed Petitioner's removal pending further order of the appellate court. On May 16, 2006, the Fourth Circuit dismissed the Petition. The mandate issued on July 10, 2006. *See Diallo v. Gonzales*, No. 06-1135 (4th Cir. 2006).

On December 7, 2005, Petitioner informed an ICE Deportation Officer that he actually was born in Haiti. Petitioner claimed his real name is Jean Francois Bernard and he was born on December 25, 1979, in Cite Soleil, Haiti. Petitioner claimed that Mamadou B. Diallo was a former roommate of his who had returned to Guinea. *See* Respondents' Ex. 1, ¶ 5.

2

On January 17, 2006, ICE sent a request to the Embassy of Togo for issuance of a travel document for Petitioner. On July 12, 2006, the Embassy of Togo advised that it would not issue a travel document because Petitioner offered no proof of citizenship. *See* Respondents' Ex. 1, ¶ 6.

On September 28, 2006, ICE sent a request to the Embassy of Haiti for issuance of a travel document for Petitioner. After repeated attempts to determine the status of this request, Jocelyn Blemer, an officer an the Haitian Embassy, informed ICE on April 10, 2007, that the Embassy would not issue a travel document for Petitioner because there were too many differences in the biographical information he provided and there was no documented proof of his Haitian citizenship. *See* Respondents' Ex. 1, ¶ 7-9.

On April 23, 2007, the ICE Deportation Officer again spoke with Jocelyn Blemer who reiterated that the Haitian Embassy would not issue a travel document for Petitioner because she did not believe him to be Haitian. She stated that when she spoke to Petitioner, he "didn't even sound Creole." *See* Respondents' Ex. 1, ¶ 10.

The record before this court belies Petitioner's claim that he has "fully cooperate[d]" with ICE. Petition, Statement of Facts. Verified exhibits filed by counsel for Respondents show that Petitioner has repeatedly provided conflicting information concerning his birthplace and citizenship. On March 12, 2004, Petitioner wrote to Calvin McCormick, ICE Baltimore Field Office Director, claiming that he was from Guinea where his father was a warlord. He claimed that his family then moved to Liberia prior to coming to the United States. *See* Respondents' Ex. 3.[2] Later, in forms sent to the Haitian Embassy, Petitioner stated his name was Mamadou B. Diallo, born July 21, 1970,

---

[2] To the extent this letter suggests that Petition may be subject to persecution if he returns to Guinea, an alien subject to removal to a country where his life or freedom would be threatened may apply to withhold removal under 8 U.S.C. §1231(b)(3)(B). There is no record that Petitioner applied for withholding of removal pursuant to this provision.

3

in Cite Soleil, Haiti.  Three months later, Petitioner claimed his true name is Jean Francois Bernard, born September 25, 1970 in Cite Soleil.[3]  *See* Respondents' Ex. 1, ¶ 11.

Between November 30, 2005, and April 13, 2007, on four separate occasions, Petitioner was personally served with documents advising him of his legal obligation to provide proof of nativity and citizenship and the consequences of failing to comply. *See* Respondents' Ex. 1, ¶ 12.  On January 10, 2007, and April 13, 2007, Petitioner received written notice that due to his failure to comply with his legal obligation to assist in obtaining a travel document, he will remain in ICE custody and may be subject to criminal prosecution.  *See* Respondents' Ex. 1, ¶ 13.

On April 23, 2007, the ICE Deportation Officer obtained Petitioner's marriage license information from the Circuit Court of Montgomery County, Maryland.  In the marriage license application, he swore under oath that he was born in Guinea. *See* Respondents' Ex. 1, ¶ 14. On April 24, 2007, an ICE Deportation Officer met with Petitioner, posing questions to him a Haitian citizen should know.  Petitioner did not know the colors of the Haitian flag, the name of the President of Haiti, the denominations of Haitian currency, or what is Haitian Independence Day.  Despite Petitioner's allegation that he was born in Cite Soleil, a suburb of Port au Prince, he was unable to locate it on a map.  Further, he provided conflicting information about his age when he left Haiti, and admitted that he does not speak Haitian creole.  At the end of the interview, Petitioner told the ICE Deportation Officer, "If you think I'm from Africa, figure out where I'm really from." *See* Respondents' Ex. 1, ¶ 15.

---

[3] Petitioner fails to reconcile or credibly explain the numerous discrepancies in the information he has provided to ICE authorities. Paper No. 17.

**II. Analysis**

Generally, the Department of Homeland Security is expected to remove an alien during the "removal period" within ninety days following entry of an administratively or judicially final order of removal. *See* 8 U.S.C. § 1231(a). In *Zadvydas*, the Supreme Court held that post-removal-order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to effect the alien's removal from the United States and does not permit indefinite detention. *See* 533 U.S. at 700. The Supreme Court determined that after a order of deportation becomes final, an alien may be held for a six-month period. After this period:

> "[o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."

*Id.* at 701.

The exception to this requirement is when an alien fails to cooperate with the Department of Homeland Security or otherwise impedes his removal. In cases where an "alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure," the post-removal order ninety-day period and the *Zadvydas* six-month presumptively reasonable detention period are tolled. *See* INA § 241(a)(1)(C), 8 U.S.C. 1231(a)(1)(C);[4] *see also*

---

[4] 8 U.S.C. § 1231(a)(1)(C) provides:
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003); *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) (detainee cannot argue that removal is unlikely when his cooperation is a controlling factor).

In this case, Petitioner's removal period began on July 10, 2006, after his habeas petition was dismissed by the Fourth Circuit and the mandate issued. Consequently, the presumptively reasonable six-month period of Petitioner's post-order detention expired on January 10, 2007.

*Zadvydas* places the burden on the alien to show that there is no significant likelihood of removal in the reasonably foreseeable future. *See* 533 U.S. at 701. Petitioner, however, has proffers no good reason to believe there is no likelihood of removal in the foreseeable future through no fault of his own. There is no history of difficulty removing criminal aliens to either Haiti or Guinea. *See* Respondents' Ex. 1, ¶ 16. Instead, the delay here is directly attributable to Petitioner's failure to cooperate by repeatedly providing authorities with inconsistent information. Petitioner's removal, and thus his continued confinement pending removal, are the direct result his failure to cooperate. Respondents have presented adequate evidence to establish that the length of detention is not unreasonable, and indeed has been caused by Petitioner's actions. Where, as here, a detainee has caused the delay in his removal, his continued detention until such time as the additional documents required by his lack of cooperation are obtained is not unreasonable. For this court to hold otherwise is tantamount to allowing Petitioner to manipulate his own release. Accordingly, the petition for writ of habeas shall be denied by separate Order.

 June 29, 2007                                                                    /s/
Date                                                        Alexander Williams, Jr.
                                                            United States District Judge